## BROWN v. ELLIS.

### (District Court, D. Vermont. June 1, 1900.)

1. NATIONAL BANKS—ACTION BY RECEIVER AGAINST STOCKHOLDER—EVIDENCE.
   In an action by the receiver of a national bank to recover an assessment on stock alleged to be held by the defendant as executrix, a copy of entries in the stock book of the bank showing the issuance of a certificate of stock to the estate of the defendant's testator, identified as a true copy by the deposition of the former cashier, who testified with the book before him, is admissible against the defendant to prove such entries.

2. SAME—ENTRIES IN BANK BOOKS.
   As between the shareholders of a national banking association, the books of the bank are public records, and the entries therein are admissible against them, as evidence of the facts they show.

3. SAME—CERTIFICATE OF COMPTROLLER.
   The certificate of the comptroller of the currency, issued to a national bank, approving a reduction of its capital stock, is in itself proof of such reduction.

4. SAME—EVIDENCE OF LIABILITY FOR ASSESSMENT—DEMAND.
   The original order of the comptroller of the currency levying an assessment on the shares of a national bank, over his official signature and seal, proves itself, and fixes the liability of the shareholders from its date, no demand being necessary.

5. DEPOSITIONS—AUTHENTICATION—NAME OF COMMISSIONER.
   Depositions taken under a commission issued to "A. C. Strong," a notary public of a certain county, are not inadmissible because they were taken and certified by "Alfred C. Strong," as a notary public of such county, who is shown to be the same person.

6. SAME—FEDERAL STATUTE—SUFFICIENCY OF CERTIFICATE.
   Where depositions are taken for use in a federal court under the provisions of Rev. St. §§ 863–865, upon a commission issued to a notary public, it is not essential that he should attach his official seal to his certificate.

7. SAME—REDUCTION TO WRITING—WAIVER OF IRREGULARITY.
   Where, in the taking of depositions for use in a federal court under the provisions of Rev. St. §§ 863–865, both parties were present by counsel, and the testimony on both direct and cross examination was taken in shorthand and reduced to writing by the stenographer in the presence of the magistrate, witnesses, and counsel, a failure to object to such proceeding, either at the time of taking or when the depositions were offered in evidence, was a waiver of the right to have them excluded because the testimony was not reduced to writing by either the magistrate or the witness, as required by section 864.

8. NATIONAL BANKS—ASSESSMENTS ON STOCK—LIABILITY OF EXECUTRIX.
   An executrix is liable as such, under Rev. St. § 5152, for assessments made by the comptroller on shares of stock in a national bank held by her, and issued to the estate of her testator in exchange for shares held by the testator in his lifetime, and surrendered by her on a reduction of the capital stock of the bank.

This was an action at law by the plaintiff, as receiver, to recover an assessment on shares of stock in a national bank.

Thomas J. Boynton, for plaintiff.

Hiram A. Huse and John H. Senter, for defendant.

WHEELER, District Judge. The plaintiff, as receiver of the Sioux National Bank, of Sioux City, Iowa, sues the defendant, as executrix of the will of Jabez W. Ellis, for an assessment of 75 per cent. on 24 shares, made by the comptroller of the currency upon the share-holders. The case stands upon the general issue, and has been tried by the court upon agreement of counsel, and waiver in writing of a jury. The statutes provide:

"Sec. 5152. Persons holding stock as executors, administrators, guardians, or trustees, shall not be personally subject to any liabilities as stockholders; but the estates and funds in their hands shall be holden in like manner, and to the same extent as the testator, ward, or person interested in such trust funds would be, if living and competent to act and hold the stock in his own name."

The state statutes requiring claims against estates to be presented to commissioners do not apply to suits in this court. They stand as at common law. The defendant has not interposed any plea of plene administravit, or otherwise set up any lack of assets; and the liability of the defendant for the assets by this mode of pleading admitted to be in her hands is, by the force of this statute, the same as that of the testator would be if he was living. To make out this liability the plaintiff must show that the defendant holds stock as executrix, and that it has been assessed by the comptroller to this extent. To prove that the defendant holds the stock as executrix, the plaintiff offered the deposition of the cashier, which was objected to for want of form in the taking, and admitted, who testified that the capital of the bank was $500,000, of which the testator held 40 shares, of $100 each; that the capital was reduced to $300,000 February 5, 1895; that the defendant returned the certificates for the 40 shares held by the testator, which he produced, and that new certificates for 24 shares were issued to "J. W. Ellis' Estate"; and that a draft of $48 for a dividend of 2 per cent. on the 24 shares, payable to "J. W. Ellis' Estate," was sent to her, and came round indorsed by her, as executrix, as paid. The original certificate made by the comptroller of the reduction of the capital stock in the sum of $200,000, and reciting that since the reduction it is $300,000; a copy of part of a page of the stock ledger, showing:

| Date. | No. Cert. | Name | Residence. | No. Shares. |
|-------|-----------|------|------------|-------------|
| Mar. 5, '95 | 889 | J. W. Ellis' Estate | Montpelier, Vt. | 24 |

---And a stub of certificate No. 889, dated March 5, 1895, and issued to J. W. Ellis' estate,---are attached to the deposition. This was all objected to, in many and all necessary forms, as incompetent, irrelevant, and immaterial, at the time of the taking of the deposition, and the objections are insisted upon now. The original certificates issued to the testator, of themselves, show that he was in his lifetime the holder of the 40 shares. By section 5143, Rev. St. U. S., the reduction of the capital would become valid only upon the approval of the comp-

troller obtained. His certificate of approval, obtained by the bank, of itself proved the reduction. The reduction of the capital, and of the number of shares of each shareholder proportionately, would not change the assets of the bank, nor the proportionate shares of the shareholders, respectively, in the assets or liabilities; but only the number of shares of each would be reduced proportionately, leaving the proportion of each to the whole the same as before. When the testator and the defendant, as executrix, held 40 shares of a capital of $500,000, they had $1/1250$ part of the bank; and when she held the same shares, reduced to 24, of a capital reduced to $300,000, she had the same share,—$1/1250$ part of the bank. She has, as executrix, held after him the same share in the bank, in the same right, all the while. If the capital had not been reduced, an assessment of only 45 per cent. on the par value of each share would have been needed. One of 75 per cent. on the par value of the reduced number of shares produces the same sum. The books of the bank are, among the shareholders, public records, and evidence of what they show. The entry from the stock ledger was testified to by the former cashier, with the book before him, and it shows that 24 shares of the reduced stock belongs to the estate of J. W. Ellis. Hayden v. Williams, 37 C. C. A. 479, 96 Fed. 279. The defendant, as executrix, holds all the assets of that estate, and so holds these shares. This much appears without considering the testimony of the cashier, merely as such, as to who were shareholders or otherwise, except as identifying the books and papers mentioned, and proving the copy of the entry in the stock ledger.

The original order of the comptroller, laying the assessment upon the shares, is attached to a deposition of the receiver, taken upon the same occasion and in the same manner as that of the cashier, and admitted subject to the same objections. This original order of that department of the government, under his official signature and seal, proves itself. It conclusively fixes the liability of the shareholders from its date. Casey v. Galli, 94 U. S. 673, 24 L. Ed. 168; Bank v. Case, 99 U. S. 628, 25 L. Ed. 448.

The point is made that no demand is shown. The deposition of the receiver shows a copy of a notice of the assessment, and request of payment sent by mail from the receiver to the defendant. It is objected to because the original is not accounted for. This objection may be well taken; but as no demand of or notice to the stockholders needs to be added to the order of the comptroller, to create the liability, the exclusion of the evidence of the notice will not affect it.

The principal objections to the admissibility of the depositions were that notice was given for taking them before, and a commission for taking them was issued to, "A. C. Strong, Notary Public of Woodbury County, Iowa," and they were taken by "Alfred C. Strong," as notary public of that county, and certified by him as such notary, without attaching his official seal to the certificate. The depositions were taken under the statutes of the United States. These objections were overruled, because Alfred C. Strong includes A. C. Strong, and is shown to be the same person; and the part of the statute authorizing the taking of depositions before a notary does not require a seal to its certification (section 863), and that part referring to a seal, which was followed

by the commission, only requires that the deposition and certificate be "sealed up" for transmission to the court (section 865).

The statute requires the testimony to be reduced to writing by the magistrate, or by the witness in the magistrate's presence, and by no other person, and, after it is reduced to writing, to be subscribed by the deponent. Section 864. The certificate shows the attendance of counsel for each party, and states that the depositions, as given, were "taken in shorthand and reduced to writing by my stenographer and clerk in my presence, and in the presence of such witnesses and the said counsel, and from the statements of the witness, and that the deposition of each witness was by me carefully read over to such witness, and subscribed by each witness in my presence, and in the presence of such of said counsel and parties in said cause as were in attendance." This is not such a strict compliance with the statutes as might be required, if not waived, to make a deposition so taken in invitum admissible. Cook v. Burnley, 11 Wall. 659, 20 L. Ed. 29. If the defendant had objected or not impliedly consented to the mode of taking followed, this objection to the admissibility of the deposition would apparently have been fatal. When this statute was passed, testimony out of court was taken down in longhand, and such a provision would be a safeguard against error and fraud. Now testimony is taken by stenographers and written out with quite as much safety. The defendant not only did not object to this method, but took part in it by cross-examining the witnesses, and having their cross-examination taken down in the same way. This was a waiver then, and the failure to object on this ground when the deposition was offered would be a waiver now. To hold otherwise, and exclude the evidence now, would leave the plaintiff without proof upon the points covered by the depositions, and, in justice, would require a continuance of the case to afford an opportunity to supply it.

These questions arising upon the depositions are technical, and related only to matters which might be supplied if excluded. The most important one, relating to the right of recovery, is whether shares standing in the name of an estate, merely, and not to any person, are so assessable as to create a liability at law. If these shares had been acquired by the executrix anew, and placed upon the books of the bank in the name of the estate, merely, there might be difficulty in maintaining an action for an assessment upon them; for, as they would never have been shares of the testator, they might not be held by her as executrix. The original shares were, however, held by the testator, and came to and were held by the defendant as executrix, and have always been so held by her in the right to which the statutes in terms applies, changed merely in number. The liability is placed by the statute upon the holding derived from the testator, and is limited to assets of the estate, as any liability of an executor for an obligation of the testator is limited at common law. The personal judgment follows only upon the admission of assets made by the pleading. Judgment for plaintiff.