Argued January 21, appeal dismissed March 22, 1927.

# STATE BANK OF PORTLAND v. F. E. GOTSHALL.

(254 Pac. 800.)

**Banks and Banking—Assessments Under Stockholders' Double Liability Statute Held Within Discretion of Superintendent of Banks (Const., Art. XI, § 3; Or. L., § 6222).**

1. Under Constitution, Article II, Section 3, and Section 6222, Or. L., providing for double liability of bank stockholders, questions as to necessity for assessment against stockholders, and the amount of such assessment, *held* left to discretion of superintendent of banks and his decision cannot be attacked.

**Banks and Banking—One Who Purchased and Paid for Bank Stock Held a Stockholder, Although She Never Received Stock Certificates.**

2. Defendant purchased bank stock, and paid for it by surrendering other stock and giving note for balance, but never received stock certificates. *Held,* she was stockholder, and liable for statutory double liability.

**Banks and Banking—Fraudulent Inducement of Purchase of Bank Stock Held No Defense to Suit Under Double Liability Statute.**

3. Fact that purchase of bank stock was induced by fraud of bank officers *held* no defense to suit under double liability statute; purpose of statute being protection of depositors and creditors.

**Appeal and Error—No Right of Appeal Exists Until Judgment has Been Entered, Even Though Court has Directed Entry of Judgment.**

4. Where court made finding of fact, and directed that judgment be entered, but such judgment had not been entered, *held* no right to appeal exists.

Appeal and Error, 3 C. J., p. 598, n. 13, p. 601, n. 38; 4 C. J., p. 53, n. 41.
Banks and Banking, 7 C. J., p. 742, n. 69 New.
Corporations, 14 C. J., p. 481, n. 87, p. 1007, n. 91, 92.
Courts, 15 C. J., p. 929, n. 72.
Trial, 38 Cyc., p. 1961, n. 65.

From Multnomah: WALTER H. EVANS, Judge.

Department 1.

'APPEAL DISMISSED.

2. See 3 R. C. L. 400.
3. See 3 R. C. L. 399.
4. See 2 R. C. L. 32.

For appellant there was a brief over the names of *Mr. Wm. M. LaForce* and *Mr. Guy L. Wallace,* with an oral argument by *Mr. LaForce.*

No appearance for respondent.

McBRIDE, J.—This is an action at law brought by the plaintiff as superintendent of banks of the State of Oregon to recover under the double liability clause of Section 3 of Article XI of the Oregon Constitution, which provides that the stockholders of a banking concern are liable equally and ratably for the benefit of the depositors of said bank to the amount of their stock at the par value thereof, in addition to the par value of such shares. In aid to this provision of the Constitution, Section 6222, Or. L., among other things, provides:

"If, at any time after any bank or trust company has been taken possession of by the superintendent of banks, he shall discover that the assets of such bank or trust company are insufficient to pay its liabilities, other than its stockholders, it shall be the duty of the superintendent of banks to ascertain the amount of such deficiency and shall levy an assessment upon the stockholders of said bank or trust company for the amount of such deficiency, not exceeding their liabilities as provided by law."

The section then provides for action to collect the amount of such assessment. This provision of our banking code is in effect practically identical with the provision on the same subject in the federal banking statute.

1. The defendant first raises the question by answer, that it is necessary for the superintendent of banks to show the amount of the deficit and the levy of 100 per cent, assessment. This statute being sim-

ilar to the federal statute on the same subject, if not in fact actually taken from it, we think the decisions under the federal banking code are controlling in which it has been frequently held that the decision of the comptroller of the currency, who stands in practically the same position as the superintendent of banks does in this state, cannot be attacked.

In *Brown* v. *Ellis,* 103 Fed. 834, it is said:

"The original order of the comptroller of the currency levying an assessment on the shares of a national bank, over his official signature and seal, proves itself, and fixes the liability of the shareholders from its date, no demand being necessary."

In *Rankin* v. *Miller,* 207 Fed. 602, it is held that notice to stockholders of the insolvent national bank by the comptroller is not a prerequisite to the maintenance of the suit, the court saying:

"The comptroller of the currency has power to appoint a receiver for an insolvent national bank and call for a ratable assessment upon the stockholders without a previous ascertainment of necessity for such action."

See, also, *Bushnell* v. *Leland,* 164 U. S. 684 (41 L. Ed. 598, 17 Sup. Ct. Rep. 209); *Casey* v. *Galli,* 94 U. S. 673 (24 L. Ed. 168); *United States* v. *Knox,* 102 U. S. 422 (26 L. Ed. 216).

In *Kennedy* v *Gibson,* 8 Wall. 498 (19 L. Ed. 476), a case frequently referred to in other federal decisions, it is held that the preliminary finding by the comptroller is a prerequisite to an action for the recovery of liability.

The questions as to the necessity of an assessment and the proceedings against the stockholders to enforce their personal liability, and whether the whole or a part, or if only a part, how much shall be col-

lected, are referred to the judgment and discretion of the comptroller and his determination is conclusive: *Kennedy* v. *Gibson, supra; Casey* v. *Galli, supra; Germania Nat. Bank* v. *Case*, 99 U. S. 628 (25 L. Ed. 448).

2, 3, The next question raised is that, through fraud and connivance of the People's Bank and State Bank, as well as the superintendent of banks, perhaps, the appellant Gotshall was induced to give her five shares of stock in the People's Bank and take five shares of stock in the State Bank, giving her note for $150 to make up the assumed difference in value. The transcript of testimony discloses that a consolidation of the two banks was in contemplation although it took the form of a sale by the People's Bank to the State Bank, the property rights of the stockholders of the People's Bank being protected by the surrender of the stock in the People's Bank at a valuation of $120 per share and taking the stock of the State Bank at a valuation of $150 per share.

In the written decision in this case, which really amounts to a finding of fact, the court found that the appellant Gotshall by proxy attended all the preliminary meetings relating to the consolidation of the two banks; that she went to the State Bank, surrendered the People's Bank stock and signed a note for the difference in trading value of the Peoples and the State Bank stock; that she surrendered her stock for the purpose of having certificates in the State Bank issued to her, and that they were issued. The finding also states that she denies having received them. The court found that she became a stockholder in the State Bank when she surrendered her stock and signed a note for the difference in value; but the fact is apparent that, if she did not actually receive physical possession of the stock, she might have done

so at any time, the certificates of stock being merely the evidence of her being a stockholder. But the fact of the subscription and paying by note for the difference in price, made her a subscriber of stock and liable in this case.

The defendant purchased her stock by surrendering her People's Bank stock and giving her note for $150 in payment of the balance of the purchase price. The stock certificate was made out, duly signed and removed from the stock-book. Whether she has it or not, or whether it was kept as collateral security for the note for $150, does not clearly appear, but she seeks to avoid responsibility on the ground that she did not receive physical possession of the certificate. In *State* v. *Smith,* 15 Or. 98 (14 Pac. 814, 15 Pac, 137), this court held that a person who has a certificate of stock which has been improperly indorsed, is a stockholder and as such, is entitled to be a director.

We are of the opinion that Miss Gotshall became a stockholder in the State Bank when she surrendered her stock in the People's Bank to the State Bank and gave her note in payment of the difference in value of the stock of the two institutions. It does not appear that she has been injured in any way by the fact that she did not get physical possession of the State Bank stock, as a few months thereafter it became wholly insolvent.

The claim that said purchase was induced through fraud on the part of the officers of the People's Bank and the State Bank cannot be urged in this action. This is not an action between the defendant and the officers of the two banks, or, indeed, between the defendant and the State Bank. There are other parties, who have rights to be protected, namely, the depositors and other creditors of the bank.

In *Scott* v. *Deweese,* 181 U. S. 292 (45 L. Ed. 822, 828, 21 Sup. Ct. Rep. 585) it is said:

"The present suit is primarily in the interest of creditors of the bank. It is based upon a statute designed not only for their protection, but to give confidence to all dealing with national banks in respect to their contracts, debts, and engagements, as well as to stockholders generally. If the subscriber became a shareholder in consequence of frauds practiced upon him by others, whether they be officers of the bank or officers of the government, he must look to them for such redress as the law authorizes, and is estopped as against creditors, to deny that he is a shareholder, * * if, at the time the rights of creditors accrued, he occupied and was accorded the rights appertaining to that position."

To the same effect are the cases of *Newton Nat. Bank* v. *Nebegin,* 74 Fed. 135 (33 L. R. A. 727), and *Rand* v. *Columbia Nat. Bank,* 94 Fed. 349.

While this case is one of great importance, we have been embarrassed by the fact that, through some probable misunderstanding, the respondent has not filed a brief and we have been compelled to resort to the briefs of appellant for aid, as well as to considerable research among the authorities.

4. It is also said in the appellant's brief, that the court made no findings of fact in this case. The court made and filed what is termed a decision which really amounts to a finding of fact, and directed that an order of judgment be issued. There is more or less evidence supporting the finding in favor of the plaintiff. It does not appear that any formal judgment was ever entered in this case. The appellant, however, has seen fit to treat the findings or decision of the court directing that a judgment be entered as though it were in fact a judgment. Strictly speak-

ing, the defendant is not in court and the appeal will have to be dismissed for that reason, and the case remanded to the lower court, which no doubt will complete its work by ordering a judgment upon the findings. We have only considered the fact or any feature of the case at all in order to prevent useless future litigation in the court below.

The appeal is dismissed.        APPEAL DISMISSED.

BURNETT, C. J., and RAND and COSHOW, JJ., concur.